OPINION
{¶ 1} Defendant-appellant, Shawn Gabriel ("Gabriel"), appeals from the judgment of the Ashtabula County Court of Common Pleas, convicting him of one count of Breaking and Entering, in violation of R.C. 2911.38(A) and sentencing him to twelve months in prison, with credit for 267 days time served. We affirm the judgment of the trial court.
 {¶ 2} On September 13, 2001, at approximately 2:30 a.m., Officer Stephen Kaselak ("Kaselak"), of the Ashtabula Police Department, arrived at the Ashtabula Public Works Department Building, to refuel his patrol vehicle. The Public Works building is located right next door to the Ashtabula County Transportation Services ("ACTS") garage. Both buildings are bisected by a fence surrounding a large complex containing several buildings, but there are doors to both the Public Works building and the ACTS garage which open to the street.
 {¶ 3} As Kaselak exited his vehicle to retrieve a key from a lockbox to unlock the gate and drive to the gasoline pumps, he noticed a bicycle lying on the ground, about 40 feet away, near the front door of the ACTS garage. Before he could retrieve the key to the lockbox, Kaselak observed Gabriel "walk right out the front door" of the ACTS building toward the bicycle.
 {¶ 4} Kaselak then approached Gabriel and asked him for identification, and he complied. Kaselak then began speaking with Gabriel, who explained that he was employed at the ACTS garage and that he had just finished his work shift. Gabriel then produced a key marked "back door" as a means of demonstrating to Kaselak that he worked there. Kaselak then explained that he wanted to verify Gabriel's employment with the management of the ACTS garage, at which time Gabriel fled on foot. Kaselak gave chase on foot, but failed to apprehend Gabriel at that time.
 {¶ 5} Returning to the Public Works complex, Kaselak met with Anthony Angelo ("Angelo"), one of the supervisors at the ACTS garage, who had been summoned to the scene. Kaselak and Angelo then entered and inspected the ACTS building. During the course of the inspection, Kaselak and Angelo observed some desk drawers in the office area had been opened and the contents had been "shuffled around."
 {¶ 6} On November 9, 2001, Gabriel was indicted on a single count of Breaking and Entering, a fifth degree felony, in violation of R.C. 2911.13. Upon arraignment, Gabriel pled not guilty to the charges.
 {¶ 7} On March 28, 2002, Gabriel filed a motion requesting a competency evaluation. The trial court ordered psychiatric testing, and scheduled a competency determination. On June 21, 2002, following the submission of a psychological report on Gabriel, the court scheduled a competency hearing for July 2, 2002. Gabriel failed to appear at the hearing, and a warrant was then issued for his arrest.
 {¶ 8} Gabriel subsequently filed motions to continue the competency hearing and requested that a psychologist be appointed on his behalf. At the same time, Gabriel waived all statutory and speedy trial rights.
 {¶ 9} On March 28, 2003, the court determined that Gabriel was not competent to stand trial and ordered him to undergo psychiatric treatment for a period of one year at Heartland Behavioral Healthcare, located in Massillon, Ohio.
 {¶ 10} On August 27, 2003, the trial court, upon notification from psychiatric professionals that Gabriel had been restored to competency, scheduled another competency hearing, and subsequently found Gabriel competent to stand trial.
 {¶ 11} A two day jury trial commenced on November 3, 2003, and Gabriel was found guilty as charged and sentenced to a twelve month prison term.
 {¶ 12} Gabriel timely appeals, asserting four assignments of error:
 {¶ 13} "[1] Appellant's conviction of Breaking and Entering in violation of Revised Code 2911.13 is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence.
 {¶ 14} "[2.] Appellant's Constitutional rights of due process and due course of law were violated when Assistant Ashtabula County Prosecutor Brenda Kaminsky made remarks in rebuttal argument that were unsupported by the evidence.
 {¶ 15} "[3.] Judge Gary Leo Yost abused his discretion when he gave appellant a twelve month prison sentence.
 {¶ 16} "[4.] Appellant's Constitutional rights were violated when he was given the maximum possible sentence for grand theft based upon findings of fact that were neither agreed to by counsel nor found by a jury."
 {¶ 17} In his first assignment of error, Gabriel alleges that his conviction for Breaking and Entering was not supported by sufficient evidence and that it was against the manifest weight of the evidence, because the state failed to prove beyond a reasonable doubt that Gabriel had the requisite "purpose to commit a theft offense." We disagree.
 {¶ 18} A challenge on the basis of sufficiency of the evidence is predicated on whether the state has presented evidence for each element of the charged offense. State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16. The relevant inquiry when testing the sufficiency of the evidence is whether, after reviewing the evidence and the inferences drawn from it in the light most favorable to the prosecution, any rational trier of fact could find all elements of the offense proven beyond a reasonable doubt. Id., citing State v.Jones, 91 Ohio St.3d 335, 345, 2001-Ohio-57. A challenge to the sufficiency of the evidence raises a question of law, thus, an appellate court is not permitted to weigh the evidence when making this inquiry.State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted).
 {¶ 19} The concepts of sufficiency of the evidence and manifest weight of the evidence are distinct. "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense * * *, while `manifest weight' contests the believability of the evidence presented." Id.
 {¶ 20} Manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. "[T]he weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St. 230, at paragraph one of the syllabus. However, when considering a weight of the evidence argument, a reviewing court may "disagree with the factfinder's resolution of the conflicting testimony." Thompkins, 78 Ohio St.3d at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. "The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook, J., concurring).
 {¶ 21} Under R.C. 2911.13 (A), the state must prove that: "(1) person, by force, stealth, or deception trespasses into an unoccupied structure (2) with the purpose to commit any theft offense or any felony." State v. Sims, 11th Dist. No. 2001-L-081, 2003-Ohio-324, at ¶ 35.
 {¶ 22} Gabriel argues, based upon Angelo's testimony that a cordless drill and an air gun were discovered missing after the incident, combined with Kaselak's admission that he did not observe Gabriel with these items, and the absence of fingerprint evidence connecting Gabriel to the open desk drawers, constituted a failure of the state to prove that Gabriel had a "purpose to commit a theft offense." This argument is, at best, disingenuous.
 {¶ 23} It is well-established in Ohio that circumstantial evidence may be used to prove an essential element of the offense charged. State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph one of the syllabus; Sims,
2003-Ohio-324, at ¶ 40.
 {¶ 24} Our review of the record reveals the following direct and circumstantial evidence. Kaselak testified that he saw Gabriel leaving the ACTS garage at 2:30 a.m. on the morning in question. Kaselak also testified that he normally stops at the garage at least once per night to fuel his vehicle and that it was not normal to see employees at the service garage in the middle of the night and that he paid particular attention to the ACTS garage on that night, because it had "suffered a couple thefts" recently.
 {¶ 25} Angelo testified that the garage normally opened at 5:00 a.m. and closed at 6:00 p.m., and that, with the exception of a single maintenance man, who sometimes worked until about 12:00 a.m., no employees were scheduled to work overnight. Angelo also stated that Tuesdays and Wednesdays were normally scheduled days off. Angelo confirmed that Gabriel had previously worked at the garage for a short time, but that he had been fired some time shortly before the night of the incident. Furthermore, Angelo identified the key that Gabriel handed to Kaselak as the key belonging to the back door of the garage, which provided a "straight shot" through a hallway into the dispatch office where the desk drawers, which were normally closed, were found open and the contents disturbed.
 {¶ 26} Furthermore, Angelo testified that at the time of the incident, fare boxes containing daily cash receipts from the city buses were routinely stored in the office but that none of the money had been taken on the night in question. Angelo testified that only he and two dispatchers carried keys for the front door, but that no employee ever carried a key to the back door, which was used exclusively as an exit. Angelo testified that the key to the back door was routinely kept in a desk drawer in the office, and as a result, that key was not discovered missing until the day before the incident.
 {¶ 27} Additionally, there is testimony from Kaselak that when he told Gabriel that he wanted to verify his employment at the ACTS garage, Gabriel fled.
 {¶ 28} Our review of the entire record reveals that it is uncertain that any items were found missing on the night in question, as Gabriel claims, but this is irrelevant to the issue of purpose to commit a theft offense. Since the intent of an accused person is only in the mind of the accused, it can only be determined by the surrounding facts and circumstances. Mentor v. Riskin (Dec. 3, 1999), 11th Dist. No. 98-L-203, 1999 Ohio App. LEXIS 5758, at *9. Viewing the evidence in the light most favorable to the prosecution, we find that there is sufficient evidence by which a reasonable jury could find the element of purpose to commit a theft offense beyond a reasonable doubt.
 {¶ 29} Moreover, we cannot find that the jury clearly lost its way or created a manifest miscarriage of justice. Reviewing the record, we find that the jury was instructed on all of the elements of criminal trespass, a lesser included offense, yet chose, based upon all of the evidence and the reasonable inferences drawn therefrom, to convict on the charge of Breaking and Entering. Power to grant a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, 20 Ohio App.3d, at 175; Statev. Wynder, 11th Dist. No. 2001-A-0063, 2003-Ohio-5978, at ¶ 23. Under the circumstances of the instant case, we see no reason to substitute our judgment for that of the jury. Gabriel's first assignment of error is without merit.
 {¶ 30} In his second assignment of error, Gabriel claims that the prosecutor's remarks during closing argument violated his rights to due process and due course of law. The prosecutor, in response to defense counsel's contention that none of the witnesses saw Gabriel in the office on the night in question remarked, as follows. "No. Officer Kaselak didn't see him in the office. Officer Kaselak saw him as he was walking out the front door. If he was walking out the front door which leads from the office, isn't it reasonable that [he] went in the back door which leads into the office?"
 {¶ 31} A prosecutor's conduct during trial is not grounds for error unless the defendant is deprived of a fair trial. State v. Wright, 11th Dist. No. 2000-P-0128, 2002-Ohio-1432, 2002 Ohio App. LEXIS 1497, at *20 citing State v. Maurer (1984) 15 Ohio St.3d 239, 266. The test used to determine if there was prosecutorial misconduct in closing argument is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984),14 Ohio St.3d 13, 14. "Factors such as the nature of the closing remarks, whether the trial court gave corrective instructions, and the strength of the evidence * * * must be taken into account." Wright,
2002 Ohio App. LEXIS 1497, at *21.
 {¶ 32} In the case at bar, defense counsel objected. The trial court overruled the objection, but made the following comment to the jury: "Keep in mind this is closing argument and its up to you to determine what the evidence was in this case." Assuming, arguendo, this remark was improper, Gabriel has failed to demonstrate how he was prejudiced by the comment, where there is ample evidence, absent this comment, to convict him. "Prosecutors are entitled to latitude as to what the evidence has shown, and what inferences can be reasonably drawn from the evidence."State v. Smith, 80 Ohio St.3d 89, 111, 1997-Ohio-355. Since there was evidence at trial that Gabriel was observed leaving the building from the front door and that he was in possession of a key which belonged to the rear door, which led directly to the office, it was reasonable to infer that Gabriel was in the office that night. Gabriel's second assignment of error is without merit.
 {¶ 33} Gabriel's third and fourth assignments of error relate to the propriety of his sentencing, they will be discussed together. Gabriel initially alleges that the trial court abused its discretion by imposing a twelve-month prison sentence, the maximum allowable for a felony of the fifth degree. R.C. 2929.14(A)(5). Gabriel additionally argues that his Sixth Amendment rights under Blakely v. Washington (2004), ___ U.S. ___,124 S.Ct. 2531, 2537, were violated since he was given the maximum sentence for breaking and entering based upon findings of fact that were not found by the jury or stipulated to by defense counsel.
 {¶ 34} We note that Gabriel was released from incarceration on May 5, 2004. His third and fourth assignments of error are therefore moot. Statev. Lane-Rout, 11th Dist. No. 2003-A-0037, 2005-Ohio-702, at ¶¶ 7-8.
 {¶ 35} For the foregoing reasons, we affirm the judgment of the Ashtabula County Court of Common Pleas.
O'Neill, J., Rice, J., concur.