OPINION
{¶ 1} Defendant-appellant, Kassandra Hill, appeals from the judgment, following jury trial, of the Ashtabula County Court of Common Pleas, convicting her of one count of complicity to grand theft auto, a felony of the fourth degree, in violation of R.C.2923.03, and 2913.02(A)(1) and (B)(5) and sentencing her to eight months in prison. We affirm.
 {¶ 2} Undisputed evidence adduced at trial reveals the following. On March 10, 2004, at approximately 7:25 a.m., Kathy and Stephen Magda were in the process of opening their place of business, Kathy's Country Kitchen restaurant, located at the corner of State Route 193 and Mells Road in Dorset Township, Ashtabula County, Ohio, when a red and white SUV, believed to be a Ford Bronco, backed into one of the parking spaces in front of the restaurant. Kathy Magda testified that the vehicle was driven by a young male, and that there was a female passenger, later identified as appellant, Kassandra Hill, in the front seat of the vehicle with him. Although the restaurant typically opened at 8:00 a.m., Mrs. Magda decided to unlock the doors and turn on the lights, since it appeared there were customers waiting, and she had completed her preparations to open the restaurant.
 {¶ 3} After about 15 minutes, the young man and young woman in the SUV eventually walked into the restaurant. The young unidentified male waited in the entrance foyer, while Hill approached Kathy Magda to ask her if the restaurant provided free breakfasts. When told that she had confused the restaurant with another local restaurant which sometimes did provide free breakfasts, Hill and her companion left the restaurant and returned to their vehicle, with the male again in the driver's seat and Hill in the passenger seat. The two then left the parking lot of Kathy's Country Kitchen, driving across State Route 193 to the Dorset Speedy Mart.
 {¶ 4} Kathy and Stephen Magda then observed the SUV attempt to park behind the Speedy Mart, where there was no parking, before pulling around and parking, facing out toward State Route 193, at the far end of a row of two other vehicles; a van, and a Chervolet Lumina, which were parked in front of the building. The Lumina, which was owned by Larry Martin, proprietor of the Dorset Speedy Mart, was left running so that the windows could defrost after being parked overnight. Martin had gone into the Speedy Mart that morning to do some paperwork and make a few phone calls, before taking the Lumina to have it cleaned and detailed, so that it could be offered for sale at his used car lot.
 {¶ 5} After parking the SUV next to the van, Hill and her male companion sat in the vehicle for approximately thirty seconds, before Hill exited the vehicle from the passenger side, and the man exited the driver's side and walked around the vehicle behind Hill. Hill then entered the store while the man walked to the side of the store and peered through the side door of the building, before walking toward the Lumina. While these events were occurring, the Magdas, who suspected something was amiss, attempted to call Rose Becker, the day clerk at the Speedy Mart, to inform her of what was happening, but the phone line was busy.
 {¶ 6} A video from the Speedy Mart's security camera revealed that upon entering the store, Hill stayed near the front of the store and looked around before backing up and walking toward the front door again, at which time she opened it and looked outside. Becker, who had been in the back room walked toward the counter. Hill then walked to the counter, purchased a lottery ticket, and left.
 {¶ 7} While Hill was in the store, Stephen Magda watched Hill's male companion open the door to the Lumina, get in, and quickly drive away from the Speedy Mart, headed north on State Route 193. When he observed the unidentified male getting into the Lumina, Stephen threw the phone to his wife and ran across State Route 193 toward the Speedy Mart. He arrived right as the unidentified male was leaving the parking lot at a high rate of speed. As Stephen walked toward the entrance to the Speedy Mart, he passed Hill as she was walking out. Hill walked to the SUV, entering from the driver's side of the truck, and drove away, likewise heading northbound on State Route 193.
 {¶ 8} Kathy Magda reached the Speedy Mart by telephone around the same time her husband was arriving at the store. Upon hearing what had happened, Martin walked out of the store and found the Lumina was missing. Martin called to report the vehicle stolen before taking the van and proceeding northbound on Route 193 toward Interstate 90. Unable to find his missing vehicle, Martin turned around and headed back toward the Speedy Mart. In the meantime, Deputy Julius Petro of the Ashtabula County Sheriff's Department had arrived at the Speedy Mart to speak with the witnesses. After spending approximately 40 minutes interviewing Becker, Martin, and the Magdas, and completing a stolen vehicle report, Deputy Petro left the scene.
 {¶ 9} Shortly thereafter, Hill arrived at Kathy's Country Kitchen and placed an order for breakfast. Stephen Magda, recognizing Hill as the woman who left the Speedy Mart in the SUV, contacted Becker and had her summon the Sheriff's Department again. Deputy Petro returned to the restaurant while Hill was having breakfast and asked to speak with her outside. Deputy Petro asked her if she knew anything about a stolen vehicle, and Hill responded that she did not. Hill was subsequently identified by Rose Becker as being the individual who was in the Speedy Mart at the time the car was stolen, and placed under arrest.
 {¶ 10} On May 24, 2004, the Asthabula County Grand Jury returned a single-count indictment against Hill for Complicity to Grand Theft of a Motor Vehicle, a felony of the fourth degree, in violation of R.C. 2923.03 and 2913.02.
 {¶ 11} Following Hill's plea of not guilty, the matter proceeded to jury trial on September 13, 2004, after which the jury returned a guilty verdict. On January 14, 2005, the court sentenced Hill to serve eight months in prison, followed by up to three years of post-release control, and ordered to pay restitution to Larry Martin in the amount of $2,200.
 {¶ 12} Hill timely appealed, asserting four assignments of error:
 {¶ 13} "[1.] Appellant's conviction of complicity to commit grand theft auto in violation of Revised Code 2913.02 and 2923.03 is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence.
 {¶ 14} "[2.] Ashtabula County Common Pleas Court Judge Gary Leo Yost erred to the prejudice of appellant when he refused to tell the jury that heard her case that mere knowledge that a crime is going to be committed without an act in furtherance of it does not make an accused guilty as an aider and abettor.
 {¶ 15} "[3.] The trial court below abused its discretion when it gave appellant a prison sentence that is longer than the statutory minimum penalty for what she was found guilty of.
 {¶ 16} "[4.] Appellant's Constitutional rights were violated when she was given a sentence for Complicity to Commit Grand Theft Auto based upon finding of fact that were neither agreed to by counsel nor found by a jury."
 {¶ 17} In Hill's first assignment of error, she argues that her conviction for complicity to grand theft is based upon insufficient evidence, since the State failed to meet its burden of proof by failing to show that she acted with the requisite knowledge, and that the evidence failed to show that she acted in any way to aid, abet, or encourage the unidentified male to steal Martin's vehicle. Apellant argues that the most that could be proven, given the state of the evidence, is that she witnessed the crime happen. For these same reasons, appellant also argues that her conviction was against the manifest weight of the evidence.
 {¶ 18} A challenge to the sufficiency of the evidence raises a question of law; thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee
(Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). The relevant inquiry when testing the sufficiency of the evidence is whether, after reviewing the evidence and the inferences reasonably drawn from it in the light most favorable to the prosecution, any rational trier of fact could find all elements of the offense proven beyond a reasonable doubt. State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d, 335, 345, 2001-Ohio-57;State v. Wallen (1969), 21 Ohio App.2d 27, 35.
 {¶ 19} Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. The concepts of sufficiency of the evidence and manifest weight of the evidence are distinct. "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." Schlee,
1994 Ohio App. LEXIS 5862, at *13. "[T]he weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St.2d 230, at syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony." Tompkins, 78 Ohio St.3d at 387, citingTibbs v. Florida (1982), 457 U.S. 31, 42. "The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook, J., concurring).
 {¶ 20} Moreover, a finding on review that the jury's verdict was against the manifest weight of the evidence must be reserved only for those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable jury could have found the defendant guilty. State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin,20 Ohio App.3d at 175.
 {¶ 21} In order to survive a sufficiency of the evidence challenge on a complicity charge, the state must present evidence upon which a jury could reasonably conclude that appellant, "acting with the kind of culpability required for the commission of an offense * * * aid[ed] or abet[ted] another in committing the offense * * * and shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(A)(2) and (F). To support a conviction "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal."State v. Johnson, 93 Ohio St.3d 240, 245-246, 2001-Ohio-1336.
 {¶ 22} The theft statute provides that: "No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent * * *." R.C. 2913.02(A)(1). "If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree." R.C. 2913.02(B)(5). The complicity statute, on the other hand, states, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). "Whoever violates [R.C. 2923.03(A)] is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F).
 {¶ 23} Taken together, this means that in order to prove complicity to commit grand theft, the state is required to produce evidence that Hill knowingly aided and abetted the unknown male in committing the theft of Martin's automobile.State v. Brewton, 1st Dist. No. C-920193, 1993 Ohio App. LEXIS 1228, at *4 (citations omitted); State v. Bumphus (1976),53 Ohio App.2d 171, 173 ("in R.C. 2913.02, the degree of culpability is that of knowingly").
 {¶ 24} The culpable mental state of "knowingly" is statutorily defined as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B); Statev. Head, 11th Dist. No. 2001-L-228, 2005-Ohio-3407, at ¶ 29
(citation omitted). In virtually all cases in which an accused's mental state must be proven, the prosecution relies upon circumstantial evidence as a matter of necessity. State v.Griffin (1979), 13 Ohio App.3d 376, 377. It is well-settled in Ohio that circumstantial evidence possesses the same probative value as direct evidence. State v. Armstrong, 11th Dist. Nos. 2001-T-0120 and 2002-T-0071, 2004-Ohio-5635, at ¶ 177 (citation omitted).
 {¶ 25} Although the complicity statute does not provide a definition for the terms "aid and abet", these terms have been construed by courts to mean "to assist or facilitate the commission of a crime, or to promote its accomplishment."Johnson, 93 Ohio St.3d at 243, citing Black's Law Dictionary (7 Ed.Rev. 1999) 69. This court has stated that mere presence of the accused at the scene of the crime is not enough, "[r]ather, the state must establish that the offender `took some affirmative action to assist, encourage, or participate in the crime by some act, deed, word, or gesture.'" State v. Sims, 11th Dist. No. 2001-L-081, 2003-Ohio-324, at ¶ 44 (citations omitted).
 {¶ 26} Aiding and abetting may be proven by both direct or circumstantial evidence and an individual's "participation may be inferred from presence, companionship, and conduct before and after the offense is committed," and also "by overt acts of assistance such as driving a getaway car or serving as a lookout." State v. Lett, 160 Ohio App.3d 46, 2005-Ohio-1308, at ¶ 29 (citations omitted). Courts have also found aiding and abetting to have occurred in cases where a defendant creates a diversion so that the principal can commit the proscribed act.State v. Bindyke (N.C. 1975), 220 S.E.2d 521, 529. In order to convict a defendant under an aider and abettor theory, the State is not required to establish the identity of the principal, but "need only prove that a principal committed the offense." Statev. Perryman (1976), 49 Ohio St.2d 14, 27.
 {¶ 27} Uncontroverted testimony at trial reveals that, when arriving at Kathy's Country Kitchen, Hill and her unidentified male companion parked facing the road and waited in their vehicle for approximately fifteen minutes before entering the restaurant. Kathy Magda testified that, prior to entering the restaurant, Hill's male companion sat in the vehicle with the driver's door of the vehicle open and was "kind of shaking his leg like he was in a hurry or something," despite the fact that the weather was cold that morning.
 {¶ 28} After leaving the restaurant, Hill and her companion returned to the SUV, with the male driving and Hill in the passenger seat and drove across the street to Dorset Speedy Mart. After attempting to drive behind the building, but finding there was no parking, the two pulled around the front of the building and again parked facing the road. Hill and the unidentified male remained in the vehicle for about 30 seconds, after which both exited the vehicle, and the male walked around to the passenger side of the SUV, and followed behind Hill before they separated, with the unidentified male walking off to peer through the back door as Hill entered the store.
 {¶ 29} While Hill entered Dorset Speedy Mart and stood near the front of the store, her companion jumped into Martin's vehicle and quickly left the scene, heading northbound on State Route 193. Testimony established that right after her male companion raced out of the Speedy Mart Parking lot, Hill exited the store and headed directly to the driver's side of the SUV without hesitating, and left heading in the same direction as the unidentified principal.
 {¶ 30} Jurors also were shown video footage from Speedy Mart's surveillance camera taken at the time Hill entered the store, and heard testimony relating to Hill's activities in the store. Testimony revealed that Hill stood at the front part of the store looking out the front door until Becker came out of the back room to stand behind the counter, at which time Hill walked directly to the counter and purchased a single lottery ticket. Becker testified that when Hill was leaving the store, she hesitated at the entrance, cracked the door open to look outside, and acted unusually happy after she looked outside. Based on the testimony and the videotape, there was substantial direct and circumstantial evidence to support Hill's conviction for complicity in the theft, under the theory that she served as a lookout, diverted the attention of Becker, or both.
 {¶ 31} Moreover, we do not find the evidence before us so incredible as to find that no reasonable jury could convict Hill for complicity to theft. Appellant argues that Hill's actions, as captured by the videotape are equally consistent with unknowing and innocent behavior, yet has failed to provide a copy of the video for this court's review, pursuant to App.R. 9. State v.Girard, 9th Dist. No. 02CA0057-M, 2003-Ohio-7178 at ¶¶ 18-19. (it is the appellant's responsibility to ensure that all evidence in the trial record, including videotape or photographic evidence). In the absence of a complete record, we, as an appellate court, have no alternative but to presume the regularity of the proceedings below. State v. Sanders, 11th Dist. No. 2003-P-0072, 2004-Ohio-5629, at ¶ 63, citing State v.Tillman (1997), 119 Ohio App.3d 449, 454; Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199. Even in the absence of the videotape evidence, we cannot say, based upon the uncontroverted testimony introduced at trial alone, that the jury clearly lost its way or created a manifest miscarriage of justice by returning a guilty verdict. Appellant's first assignment of error is without merit.
 {¶ 32} In her second assignment of error, Hill argues that the trial court erred to her prejudice by forcing the jury to decide the case on an incomplete statement of law. A review of the record reveals that Hill did not object to the judge's instructions until after the jury had begun deliberations and subsequently submitted a written question to the judge requesting clarification. On appeal, a party may not assign as error the giving or the failure to give any jury instructions, unless the party objects before the jury retires to consider its verdict and states specifically the matter objected to and the grounds for the objection. State v. Long (1978), 53 Ohio St.2d 91, 94, citing Crim.R. 30; see also, State v. Crouse (Dec. 6, 1999), 12th Dist. No. CA98-10-016, 1999 Ohio App. LEXIS 5717, at *20. Although an appellate court has the power to notice plain errors or defects affecting substantial rights, such power will be exercised only in the most exceptional of circumstances, and with great caution. Long, 53 Ohio St.2d at 94.
 {¶ 33} Appellant also argues that the trial judge committed error and abused his discretion by declining to respond to the following question submitted by the jury after deliberations had begun:
 {¶ 34} "If a person has knowledge of a crime being committed and [does not say] anything, is that aiding and abetting?"
 {¶ 35} The judge responded to the question by directing the jury to page four of the jury instructions he had provided them, which contained a definition of aiding and abetting.
 {¶ 36} Here, an examination of the jury instruction provided by the trial court reveals that the judge provided the jury with accurate and complete definitions and statements of law related to complicity. See 4 Ohio Jury Instructions (2000) 573, Section 523.03(8) ("`aided or abetted' means supported, assisted, encouraged, cooperated with, advised, or incited").
 {¶ 37} The court likewise gave proper instructions with respect to the elements of grand theft, as well as the defining requisite culpability standards of purpose and knowledge. "If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 410 (citation omitted). Since the trial court gave complete and accurate statements of all relevant law, the trial judge did not commit plain error, or abuse his discretion, by referring the jury to the original jury instructions. SeeState v. Walker (Oct. 15, 1987), 8th Dist. Nos. 52482, 52486, 1987 Ohio App. LEXIS 9176, at *10-*11. Appellant's second assigned error is without merit.
 {¶ 38} Appellant's third and fourth assigned errors both concern the issue of whether the sentence imposed against her was constitutionally proper. A review of the record reveals that appellant was incarcerated on January 28, 2005 and was released from incarceration on September 5, 2005. Since appellant has served her eight month sentence, these assignments of error are rendered moot. See State v. Gabriel, 2003-A-0126,2005-Ohio-2263, at ¶ 34; State v. Lane-Rout, 11th Dist. No. 2003-A-0037, 2005-Ohio-702, at ¶ 9.
 {¶ 39} For the aforementioned reasons, we affirm the judgment of the Ashtabula County Court of Common Pleas.
O'Neill, J., Rice, J., concur.