OPINION
{¶ 1} Defendant-appellant, Darrin G. Sweeney, appeals his judgment of conviction for various counts of Trafficking in Cocaine, Possession of Cocaine, Illegal Manufacture of Drugs and Possessing Criminal Tools. For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} On October 23, 2005, the Fairport Harbor Police Department received a phone call from a confidential informant reporting suspected drug activity taking place at the apartment of her friend, Carole Kidd. The confidential informant later came into the *Page 2 
police station for an interview, which lasted two hours, and made a written statement to police. Based upon the information provided by the confidential informant, police began conducting surveillance of Kidd's apartment, located at 224 Seventh Street.
 {¶ 3} Officer Michael Wilson, who was among the officers conducting surveillance on Kidd's residence in the ensuing days, testified that police were watching for evidence of "short-term traffic," meaning that people arrive at a particular residence and leave shortly thereafter. This behavior is consistent with drug trafficking. Officer Wilson testified that during one forty-five minute period in which he was conducting surveillance on Kidd's residence, he observed three people enter and leave the residence.
 {¶ 4} Based upon this and other information and observations, the Fairport Harbor Police conducted a "trash pull" from 224 Seventh Street. A "trash pull" is an investigatory method through which police arrange with a sanitation company to send an empty truck on the regular day trash is collected to retrieve trash from a single building or residence and deliver it directly to police.
 {¶ 5} Lieutenant Christopher J. Cichon isolated three bags from the trash pull from Kidd's apartment. These bags contained empty boxes of Chore Boy copper scouring pads; burnt pieces of Chore Boy, which were in cylindrical shapes; an assortment of empty cigarette lighters; plastic baggies with the corners torn off, remnants of the corners of plastic bags, some of which appeared to have been tied and then ripped open; and a corner of a plastic bag which contained two white rocks of a substance which later tested positive as having a cocaine base. *Page 3 
 {¶ 6} Based upon this information, the Fairport Harbor Police received a warrant to search Kidd's apartment for evidence of drug manufacturing and/or abuse. The affidavit submitted to obtain the warrant averred that Chore Boys are commonly used as filters in crack pipes and that using the corners of plastic bags is a common method of packaging crack cocaine for sale.
 {¶ 7} On October 27, 2005, at approximately 5:00 p.m., Fairport Harbor Police, accompanied by members of the Lake County Narcotics Agency (LCNA) executed the search of Kidd's residence. During the search, the police apprehended Sweeney, Kidd, James Evans, and Brooke Blewitt. When searching Sweeney's pockets, police recovered $1,470 in cash and two cell phones. Police also recovered a key ring with keys for a Dodge Durango, another Dodge product, and a key which was later found to be an override key for a safe. There is some dispute over whether the keys were recovered from Sweeney's pockets or the apartment itself.
 {¶ 8} During their search of the kitchen, police found two glass beakers, two glass measuring cups, and a plastic measuring cup containing a white residue, which later tested positive for cocaine. Police also recovered a box of syringes and a box of sandwich bags.
 {¶ 9} In the living room, police recovered crack cocaine, a bag of marijuana, various smoking pipes, and burnt Chore Boys.
 {¶ 10} In the bedroom, police found a pill bottle with rocks of crack cocaine in a dresser. Underneath the dresser, police found a digital scale with cocaine residue on it. On the floor of the bedroom, police recovered a copy of a book entitled "Cocaine Handbook," and a duffle bag containing men's clothing. *Page 4 
 {¶ 11} In the bedroom closet, police recovered a safe. Using the key obtained from their search of Sweeney, police were able to open it. Inside the safe was a loaded .38 caliber revolver inside a "gun rug," a box of .38 caliber ammunition, and a plastic grocery bag containing numerous plastic baggies, variously filled with powder cocaine, weighing 294.34 grams and crack cocaine, weighing 118.33 grams. Sergeant Bradley Kemp of the LCNA estimated the street value of the cocaine recovered from the safe at approximately $40,000.
 {¶ 12} Ownership of the handgun was traced to Dan Wysocki, from whom it had been stolen by David Shermer. Shermer testified that he had traded the gun to Kidd for some crack. Shermer also testified that he knew Sweeney through Kidd and that he had previously purchased crack from both Sweeney and Kidd.
 {¶ 13} On March 17, 2006, the Lake County Grand Jury returned a seven count indictment against Sweeney as follows: Trafficking in Cocaine (Count One), a felony of the first degree in violation of R.C.2925.03(A)(2), with a Major Drug Offender specification pursuant to R.C.2941.1410; Possession of Cocaine (Count Two), a felony of the first degree in violation of R.C. 2925.11, with a Major Drug Offender Specification pursuant to R.C. 2941.1410; Trafficking in Cocaine (Count Three), a felony of the second degree in violation of R.C.2925.03(A)(2); Possession of Cocaine (Count Four), a felony of the second degree in violation of R.C. 2925.11; Illegal Manufacturing of Drugs (Count Five), a felony of the second degree in violation of R.C.2925.04; Possession of Criminal Tools (Count Six), a felony of the fifth degree in violation of R.C. 2923.24, and Having Weapons While Under Disability, a felony of the third degree, in violation of R.C.2923.13(A)(3). *Page 5 
 {¶ 14} Prior to trial, Count Seven was severed and ordered to be tried separately. On October 17, 2006, a jury trial commenced on the remaining six charges. On October 26, 2006, the jury returned its verdict, finding Sweeney guilty as charged on all counts.
 {¶ 15} Sweeney timely appeals, raising the following assignments of error:
 {¶ 16} "[1.] The trial court erred when it denied defendant-appellant's motion for acquittal under Criminal Rule 29(A).
 {¶ 17} "[2.] The jury verdict was against the manifest weight of the evidence in violation of defendant-appellant's right to due process of law.
 {¶ 18} "[3.] The trial court erred in allowing the irrelevant and prejudicial testimony of witness David Shermer in violation of defendant-appellant's right to fair trial [under] the Fifth, Sixth andFourteenth Amendments to the U.S. Constitution, Sections 5 and 16 of Article I of the Ohio Constitution, and Ohio Rules of Evidence 401, 402, 403 and 404.
 {¶ 19} "[4.] The trial court erred by instructing the Jury on a complicity charge despite defendant-appellant's objection[,] in violation of defendant-appellant's rights to Due Process and Fair Trial as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and Sections 10 and 16, Article I, of the Ohio Constitution."
 {¶ 20} We address Sweeney's evidentiary challenges first, and thus, will address his assignments of error out of order.
 {¶ 21} In his third assignment of error, Sweeney argues that the trial court erred in allowing witness David Shermer to testify that he had previously purchased cocaine from Sweeney. Sweeney contends that the court's admission of this "other acts" *Page 6 
evidence under Evid. R. 404(B) was prejudicial since there was no "substantial proof" offered that Sweeney had previously sold crack to Shermer.
 {¶ 22} Evidentiary rulings are matters within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion whereby the defendant has suffered material prejudice.State v. Bennett, 11th Dist. No. 2002-A-0020, 2005-Ohio-1567, at ¶ 39
(citation omitted). An abuse of discretion is more than mere error of law or judgment, rather it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Id. at ¶ 40 (citation omitted).
 {¶ 23} Relevant evidence is admissible, "unless some other provision of the law makes it inadmissible." Id. at ¶ 39 (citations omitted).
 {¶ 24} Evid.R. 404(B) governs the admission of other acts evidence. The rule states:
 {¶ 25} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R 404(B).
 {¶ 26} In addition, R.C. 2945.59, provides that "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior * * * thereto, notwithstanding *Page 7 
that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 27} Generally, other acts evidence is to be construed against admissibility since "[t]he average individual is more disposed to believe that a person committed the crime charged if it is proved * * * that the defendant has committed a similar crime." State v.Elersic, 11th Dist. Nos. 2001-G-2335 and 2003-G-2512, 2003-Ohio-7218, at ¶ 23 (citations omitted).
 {¶ 28} Evidence of other acts under Evid.R 404(B) will be deemed admissible if (1) there is substantial proof that the other acts were committed by the defendant, and (2) the evidence in question tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Id. at ¶ 24; State v.Cortner, 11th Dist. No. 2005-T-0020, 2006-Ohio-871, at ¶ 31 (citation omitted).
 {¶ 29} By contrast, under R.C. 2945.59, "evidence of other acts of a defendant is admissible only when it `tends to show' one of the matters enumerated in the statue and only when it is relevant to proof of the guilt of the defendant of the offense in question." State v. Curry
(1975), 43 Ohio St.2d 66, 69 (citation omitted) (emphasis sic).
 {¶ 30} At trial, Shermer testified that he was a friend of Kidd's for a "couple of years," that he had helped Kidd move into the apartment, which according to Kidd's testimony, was in June of 2005, and that he had been to the Seventh Street apartment "eight or ten times" in the four months since Kidd had lived there. He described their relationship as a "friends with benefits" situation, in which they would get together for some "partying [and] drinking." "Partying," according to Shermer, included smoking crack occasionally with Kidd and sometimes other people. Shermer testified that he *Page 8 
would sometimes see Sweeney, whom he knew only as "Dee," at the house occasionally during this period, but that he did not know if he lived there. Shermer stated that he usually purchased crack from Kidd, but had also purchased from Sweeney "maybe four" times while at the house, but that he did not consume any crack at the apartment when he purchased it.
 {¶ 31} At issue in this trial was whether Sweeney had any involvement or connection with the drugs found in Kidd's home, since he contends he was present that day only to assist Kidd in moving from her apartment.
 {¶ 32} As is evident from the foregoing testimony, Shermer's statements are highly probative in proving a course of Sweeney's conduct contemporaneous with and inextricably linked to the current charge. The testimony tends to show Sweeney's motive, opportunity, intent, preparation, plan, knowledge and identity. Cf. State v. Martinez, 3rd Dist. No. 9-02-57, 2003-Ohio-1821, at ¶ 20 (evidence of a defendant's sale of cocaine to a witness six months earlier "was probative of [defendant's] opportunity to possess drugs, his plan to sell drugs, his knowledge that he possessed drugs, and to show the absence of any accidental appearance of the drugs [found in his possession]").
 {¶ 33} The "prior bad acts" rule, in contrast, is only meant to apply when "an accused has committed another crime "wholly independent of the offense for which he is on trial." Curry, 43 Ohio St.2d at 68. (emphasis added).
 {¶ 34} Since the alleged act could hardly be considered "wholly independent" of the current charge against Sweeney, the trial court did not err in allowing Shermer's testimony related to the purchase of crack cocaine from him. *Page 9 
 {¶ 35} Sweeney's third assignment of error is without merit.
 {¶ 36} In his first assignment of error, Sweeney argues that the trial court erred by denying his Crim.R. 29 motion to dismiss, since the state presented only "inconsistent, circumstantial" testimony of the arresting officers to link appellant to the crimes. We disagree.
 {¶ 37} Under the Ohio Rules of Criminal Procedure, a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). "[Sufficiency of the evidence * * * challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to theprosecution, any rational trier of fact could find all elements of the charged offense proven beyond a reasonable doubt." State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d 335, 345, 2001-Ohio-57
(emphasis added).
 {¶ 38} Whether sufficient evidence has been presented is a question of law, thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). Thus, an appellate court will examine the evidence and determine whether that evidence, "if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt." State v. Norwood, 11th Dist. No. 2005-L-047, 2006-Ohio-3415, at ¶ 15, citing State v.Jenks (1991), 61 Ohio St.3d 259, 273 (emphasis added). *Page 10 
 {¶ 39} In order to find that Sweeney had committed the crime of Trafficking in Cocaine, the State was required to provide evidence sufficient to prove beyond a reasonable doubt, that he "knowingly * * * [p]repare[d] for shipment, ship[ped], transported], delivered], prepare[d] for distribution, or distribute[d] a controlled substance," i.e. crack cocaine in excess of 100 grams as to the first degree Trafficking charge and cocaine (that is not crack cocaine) in excess of 100 grams but less than 500 grams as to the second degree Trafficking charge. R.C. 2925.03(A)(2), 2925.03(C)(4)(e), and 2925.03(C)(4)(g).
 {¶ 40} The State introduced the following evidence to demonstrate that Sweeney was guilty of Trafficking. Dave Shermer testified that he purchased cocaine from both Kidd and Sweeney, which is direct evidence that Sweeney was involved in the delivery and/or distribution of cocaine.
 {¶ 41} With regard to circumstantial evidence, police found two cell phones and $1,470 in cash in Sweeney's pockets at the time of the arrest. In addition, police recovered 294.34 grams of powder cocaine and 118.33 grams of crack cocaine, in various packages, from a safe found in Kidd's house, which they were able to open using a safe override key found on a keychain which also held the keys for the vehicle Sweeney drove.
 {¶ 42} Police also recovered from the apartment various glass and plastic beakers and measuring cups, a digital scale and a handbook which explained, among other things, how to process powdered cocaine into crack cocaine. Sweeney's fingerprints were the only conclusive fingerprint evidence found on the handbook and the box for the scale. *Page 11 
 {¶ 43} Sergeant Kemp testified, based on his experience in narcotics enforcement, that manufacturers/dealers often use the residences of drug users to conduct their trade in exchange for drugs. This testimony, along with evidence, in the form of a letter addressed to Sweeney and sent to Kidd's address, and the fact that police found a duffle bag containing Sweeney's clothing and personal effects in the bedroom where the drugs were found, is sufficient indirect, circumstantial, evidence from which a jury could reasonably infer that he was engaged in the distribution of cocaine and crack cocaine in excess of 100 grams.
 {¶ 44} In order to find that Sweeney had committed the crime of Possession of Cocaine, the State was required to prove, beyond a reasonable doubt, that he "knowingly obtain[ed], possessed], or use[d] a controlled substance," i.e. crack cocaine in excess of 100 grams as to first degree Possession and cocaine (that is not crack cocaine) in excess of 100 grams but less than 500 grams as to second degree Possession. R.C. 2925.11(A), 2925.11(C)(4)(f) and 2925.11(C)(4)(d).
 {¶ 45} The evidence discussed relative to Trafficking also supports Sweeney's convictions under the Possession counts. The key to the safe containing the cocaine was found on Sweeney's keychain. The cocaine handbook and the box for the scale contained his fingerprints. His personal effects were recovered in the room where the cocaine was found. This alone is sufficient to prove that Sweeney had possession of the drugs or aided and abetted another in their possession of the drugs.
 {¶ 46} In order to find that Sweeney had committed the crime of Illegal Manufacture of Drugs, the State was required to prove, beyond a reasonable doubt, that Sweeney, "knowingly manufacture[d] or otherwise engage[d] in any part of the *Page 12 
production of a controlled substance," i.e. cocaine. See R.C. 2925.04
and R.C. 3719.41 Schedule II(A)(4).
 {¶ 47} The cocaine handbook and the scale, the beakers and measuring cups, as well as the large amount of both cocaine powder and crack cocaine packaged for distribution and found in the safe are all indicative of the manufacture of crack cocaine. Sergeant Kemp provided testimony explaining the manufacturing process for crack cocaine, and indicated that the beakers and measuring cups "could easily be used" to turn powered cocaine into crack cocaine. He also testified that the digital scale recovered by police was "ideal" for the purpose of weighing out small amounts of powdered cocaine for the purpose of either manufacturing or sale. This evidence is sufficient to prove that Sweeney had engaged in the manufacture of the drugs or aided and abetted another in the manufacture of drugs.
 {¶ 48} In order to find that Sweeney had committed the crime of Possession of Criminal Tools, the State was required to prove, beyond a reasonable doubt, that he, "possessed] or ha[d] under [his] control * * *, with purpose to use it criminally," a digital scale, cocaine handbook, safe and/or beakers. R.C. 2923.24(A).
 {¶ 49} As has been demonstrated above, the state offered ample evidence that the scale, handbook, safe, and beakers were used for the production and distribution of crack cocaine, and that Sweeney had either contact with or ready access to these items. Accordingly, there is sufficient evidence to convict Sweeney of Possession of Criminal Tools.
 {¶ 50} Sweeney argues the State has merely proved the presence of potentially incriminating items during his arrest, but has offered no direct evidence demonstrating *Page 13 
that he knowingly participated in any of the crimes charged. We disagree. Not only is there direct evidence, in the form of Shermer's testimony, that Sweeney sold him crack cocaine, but it may reasonably be inferred, from the testimony, fingerprints, and other evidence that Sweeney directly engaged, or aided in, the manufacture and sale of crack cocaine. It is well-settled that "[d]irect evidence, circumstantial evidence, or both may establish an element of the charged offense."State v. Griffin, 1st Dist. No. C-020084, 2003-Ohio-3196, at ¶ 44, citing State v. Durr (1991), 58 Ohio St.3d 86, 92. Moreover, circumstantial and direct evidence are considered to be of equal probative value. State v. Heilman, 11th Dist. Nos. 2004-T-0133 and 2004-T-0135, 2006-Ohio-1680, at ¶ 26, citing Jenks, 61 Ohio St.3d 259, at paragraph one of the syllabus.
 {¶ 51} For these reasons, Sweeney's first assignment of error is without merit.
 {¶ 52} In his second assignment of error, Sweeney argues that his convictions were against the manifest weight of the evidence.
 {¶ 53} Manifest weight of the evidence raises a factual issue and involves "the inclination of the greater amount of credible evidence."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52 (emphasis sic) (citation omitted). Although the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine, State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus, when reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387. As such, the reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and *Page 14 
created such a manifest miscarriage of justice that the [judgment] must be reversed * * *." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 54} The reviewing court may only exercise its discretionary power to reverse a judgment as being against the manifest weight of the evidence only in "those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable [trier of fact] could have found thedefendant guilty." State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin,20 Ohio App.3d at 175 (emphasis added).
 {¶ 55} In arguing that his conviction was against the manifest weight of the evidence, Sweeney makes much of the fact that there appeared to be conflicting testimony at trial as to where and how police found and recovered the keys for the Durango and the safe. He argues that this conflicting testimony is sufficient to bring into doubt the jury's verdict. We disagree.
 {¶ 56} When assessing the credibility of witnesses, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it."Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at *8. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 57} In the instant matter, the undisputed evidence clearly establishes that the safe key was found on a key chain with the key for Sweeney's vehicle. While the *Page 15 
evidence linking the safe key to Sweeney would arguably bestronger if the keychain was taken from his pocket, it is no less probative or credible merely because the keychain might have been found in another location. Under these circumstances, we can find no reason to overturn the jury's verdict.
 {¶ 58} Sweeney's second assignment of error is without merit.
 {¶ 59} In his fourth assignment of error, Sweeney argues that the trial court erred by providing the jury an instruction on Complicity over his objection. Sweeney first argues that the trial court committed reversible error by giving a Complicity instruction, since he was indicted as a principal offender, rather than an accomplice. Next, he argues that the trial court committed reversible error by providing a Complicity instruction since there was no evidence that he acted as an accomplice to the crimes. We reject these arguments.
 {¶ 60} We note, at the outset, that it is within the trial court's sound discretion to determine whether the evidence presented at trial requires a particular jury instruction. State v. Strickland, 11th Dist. No. 2005-T-0002, 2006-Ohio-2498, at ¶ 24 (citation omitted). Accordingly, the court's decisions regarding jury instructions will not be overturned absent some evidence that the court abused its discretion.
 {¶ 61} With regard to his first argument, Sweeney is correct in stating that the indictment in question did not charge him with Complicity under R.C. 2923.03. However, section (F) of that statute specifically allows for a Complicity charge to "be stated [either] in terms of the statute or in terms of the principal offense." State v.Williams, 9th Dist. No. 21840, 2004-Ohio-4316, at ¶ 3 n. 1 (emphasis added). Because a defendant found guilty under the Complicity statute "shall be prosecuted and punished *Page 16 
as if he were a principal offender." R.C. 2923.03(F); State v.Hill, 11th Dist. No. 2005-A-0010, 2006-Ohio-1166, at ¶ 22, an indictment which "fails to charge [a defendant] with complicity pursuant to R.C.2923.03(F) * * * is not constitutionally infirm." Williams,2004-Ohio-4316, at ¶ 3 n. 1.
 {¶ 62} Since we have already determined that Sweeney's convictions for the principal offenses were supported by sufficient evidence and not against the manifest weight of the evidence, we cannot conclude that the trial court abused its discretion by also providing the Complicity instruction. See State v. Bell (July 16, 1992), 8th Dist. No. 60937, 1992 Ohio App. LEXIS 3722, at *14 ("Where the evidence adduced at trial supports alternative findings that the defendant acted as a principal offender or as an accomplice, the jury may be instructed on complicity pursuant to 2923.03.") (citation omitted).
 {¶ 63} Sweeney's fourth assignment of error is without merit.
 {¶ 64} For the foregoing reasons, we affirm the judgment of the Lake County Court of Common Pleas.
CYNTHIA WESTCOTT RICE, P.J., concurs, COLLEEN MARY OTOOLE, J., dissents. *Page 1