OPINION
{¶ 1} Defendant-appellant, Terrence L. Higgins, appeals the judgment of the Lake County Court of Common Pleas, following a trial by jury, finding him guilty of one count of Complicity to Attempted Grand Theft, a felony of the fifth degree, in violation of R.C. 2923.03(A)(2), 2923.02(A) and 2913.02(A)(1). For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} On July 23, 2005, at approximately 8:00 p.m., Ashley Locker arrived at the Great Lakes Mall in Mentor, Ohio, to do some shopping. She entered the mall through the women's Dillard's store and proceeded toward American Eagle Outfitters, where she planned to purchase some jeans.
 {¶ 3} As Locker rounded the corner leading into the mall's main concourse, she noticed two black men, one wearing a white t-shirt, cap, and dark shorts, and the other wearing a black t-shirt and shorts, who were standing with their backs to an external display case at the front of the J.B. Robinson jewelry store. The man in the white shirt, later identified as Higgins, was standing directly in front of the display case and appeared to be reading a sales flyer. Locker noticed the other man, who was partially shielded from view by the man in the white shirt, was attempting to break into the case with a screwdriver. Locker testified that she passed within eight to ten feet of the man in the white shirt, and that she could not help but stare at the men, because she could not believe what she had seen.
 {¶ 4} After passing the men, Locker headed into the main concourse, and stopped at the Revol Wireless kiosk, which was located across the main concourse from the J.B. Robinson store. Ryan Dement was on duty at the time. Locker approached Dement and asked him to confirm what she had witnessed and requested his help. Dement agreed that it appeared the men were attempting to break into the display case, and accompanied Locker to J.B. Robinson so she could inform the staff of what she had seen.
 {¶ 5} As Locker and Dement began approaching the J.B. Robinson store, the two men started to run away. Locker and Dement then went inside and informed Jason Sakasci, the assistant manager, of what they had seen and gave a brief description of the two men. Sakasci instructed one of his employees to call mall security and then followed Locker out into the concourse leading toward the women's Dillard's store.
 {¶ 6} When Locker and Sakasci left J.B. Robinson's, Locker noticed the men standing at the far end of the concourse, and pointed to them. Sakasci then began pursuing them. The man in the black shirt and Higgins separated, with Higgins running through the women's Dillard's store.
 {¶ 7} When he passed the Master Cuts store, Sakasci encountered Joe Zimmerman, one of the Mall Security officers. Sakasci told Zimmerman he was pursuing two suspected thieves and gave a brief description of the men. Around the same time, other security officers arrived and began pursuit, and Sakasci followed behind.
 {¶ 8} The pursuit continued through the women's Dillard's store, where, after some confusion, several Dillard's employees were able to direct mall security personnel in the direction Higgins had gone, and to the exit he had taken. As Zimmerman exited the store, he saw Higgins walking in the parking lot outside.
 {¶ 9} When Higgins turned around and saw Zimmerman, he began running through the parking lot, toward the men's Dillard's store at the northern end of the mall. Zimmerman pursued Higgins through the men's Dillard's, with associates from the store guiding him in the direction Higgins' had taken.
 {¶ 10} Zimmerman followed Higgins as he exited the store onto another parking lot, which was located between the men's Dillard's store and Kaufmann's, where he caught up to Higgins near a brick wall, which dropped about 15 feet to a loading dock below. Zimmerman testified that it appeared as if Higgins was deciding whether to jump over the wall or not. As Zimmerman approached, he called out for Higgins to stop, at which point, Higgins complied, and walked back toward Zimmerman. Around the same time, the two other members of the mall security team, including Heather Carpenter, Supervisor of Mall Security, arrived to detain Higgins. Both Zimmerman and Carpenter testified at trial that Higgins repeatedly asked them why he was being chased and maintained that he was out in the parking lot looking for his buddy.
 {¶ 11} Within minutes of his apprehension, Mentor Police arrived and took Higgins into custody. Sakasci, who had been following mall security as they were pursuing Higgins, made a brief statement to police, and then returned to the mall to see if he could locate Locker to see if she could identify Higgins as one of the men who had attempted to break into the display case.
 {¶ 12} Upon returning to the main concourse area, Sakasci located Locker and told her that police had apprehended an individual and they wanted her to meet them at the men's Dillard's store. On their way toward Dillard's, Sakasci and Locker were met by Sgt. Andy Lehner of the Mentor Police Department. Sgt. Lehner indicated that the police were going to take a written statement, and then they were going to show Locker a person and ask her if she had ever seen him before.
 {¶ 13} When they arrived at the entrance of the men's Dillard's store, Locker and Sgt. Lehner remained inside the doors, while Higgins was taken out of the police cruiser wearing handcuffs. Locker identified Higgins as the male outside the J.B. Robinson store who was acting as the lookout. The taller male in the black t-shirt was never apprehended.
 {¶ 14} On September 14, 2005, Higgins was indicted on once count of Complicity to Attempted Grand Theft, a felony of the fifth degree, in violation of R.C. 2923.03(A)(2), 2923.02(A) and2913.02(A)(1). After waiving a right to be present at his arraignment, a non-guilty plea was entered on his behalf.
 {¶ 15} The matter proceeded to jury trial on October 11, 2005. The jury subsequently found Higgins guilty as charged. On November 9, 2005, Higgins was sentenced to twelve months in prison.
 {¶ 16} Higgins timely appealed, assigning the following as error:
 {¶ 17} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 18} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 19} In his first assignment of error, Higgins raises two arguments. First, he argues that the State "failed to prove beyond a reasonable doubt that he had committed the crime." Second, Higgins claims that the state failed to meet its burden of proof that the value of the property involved was $5,000 or more, but less than $100,000. Higgins' argument, as framed, mischaracterizes the purpose of a Crim.R. 29 motion for acquittal.
 {¶ 20} Crim.R. 29 provides that "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 21} Here, Higgins raised his Crim.R. 29 motion for acquittal both at the close of the state's case in chief and at the close of his defense. The trial court denied both motions.
 {¶ 22} "A sufficiency of the evidence argument challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all elements of the charged offense proven beyond a reasonable doubt." State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d 335, 345,2001-Ohio-57. Whether sufficient evidence has been presented to allow the case to go to the jury is a question of law, thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). A reviewing court will not reverse a jury verdict "where there is substantial evidence upon which the jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." Id. citing State v. Eley
(1978), 56 Ohio St.2d 169, at the syllabus. Thus, an appellate court will examine the evidence and determine whether that evidence, "if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt." State v. Norwood,
11th Dist. No. 2005-L-047, 2006-Ohio-3415, at ¶ 15, citing Statev. Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 23} In the instant matter, Higgins was charged with Complicity to Attempted Grand Theft, in violation of R.C.2923.03, 2923.02, and 2913.02. The relevant part of the complicity statute reads as follows:
 {¶ 24} "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense * * * [.] It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender. No person shall be convicted of complicity * * * unless an offense is actually committed, but a person may be convictedof complicity in an attempt to commit an offense in violation ofsection 2923.02 of the Revised Code." R.C. 2923.03(A)(2), (B) and (C) (emphasis added).
 {¶ 25} Attempt is defined, in relevant part, as follows:
 {¶ 26} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense. It is no defense to a charge under this section that, in retrospect, commission of the offense * * * was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be. * * * Whoever violates this section is guilty of an attempt to commit an offense." R.C. 2923.02(A), (B) and (E).
 {¶ 27} The theft statute states that "[n]o person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * property * * * [w]ithout the consent of the owner or person authorized to give consent * * *. Whoever violates this section is guilty of theft. * * * If the value of the property * * * stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft." R.C. 2913.02(A)(1) and (B)(1).
 {¶ 28} Thus, when these statutes are taken together, the state has the burden of producing evidence tending to show that Higgins knowingly "aided and abetted" another in the attempt to commit the theft. See State v. Hill, 11th Dist. No. 2005-A-0010, 2006-Ohio-1166, at ¶ 23; State v. Brewton (Mar. 3, 1993), 1st Dist. No. C-920193, 1993 Ohio App. LEXIS 1228, at *4;State v. Bumphus (1976), 53 Ohio App.2d 171, 173 ("in R.C.2913.02, the degree of culpability is * * * knowingly.")
 {¶ 29} R.C. 2901.22(B) defines knowingly as follows: "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 30} In the instant matter, there was direct testimony from Locker that shortly after she arrived to do some shopping at Great Lakes Mall in Mentor, Ohio, she observed a man, who she later identified as Higgins, from a distance of less than eight feet, standing near the exterior display case outside of the J.B. Robinson Store. According to Locker's testimony, Higgins "looked like he was pretending to read" a sales flyer, while blocking the view of the other man, who was attempting to break into the exterior jewelry case with a screwdriver. Veronica DeMarco, the manager of J.B. Robinson, stated that at the time of the attempted theft, the display case contained eleven rings, the total value of which was $19,021.00.
 {¶ 31} Aiding and abetting is defined as assisting or facilitating "the commission of a crime, or to promote its accomplishment." State v. Johnson, 93 Ohio St.3d 240, 243,2001-Ohio-1336 (citation omitted); Hill, 2006-Ohio-1166, at ¶ 25. While "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor," State v. Widner (1982),69 Ohio St.2d 267, 269, we conclude, on the basis of our review of the record, that there is sufficient evidence, in the form of Locker's testimony alone, which, if viewed in a light most favorable to the prosecution, would establish each element of the crime and allow the case to go to the jury.
 {¶ 32} Higgins' arguments mischaracterize the nature of a Crim.R. 29 challenge based upon sufficiency of the evidence. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, at the syllabus. In other words "[i]f reasonable minds can reach different
conclusions as to whether each element of a crime has been proved beyond a reasonable doubt, they clearly might find guilt." Id. at 264 (emphasis sic).
 {¶ 33} Higgins' first assignment of error is without merit.
 {¶ 34} In his second assignment of error, Higgins raises the same arguments relating to the circumstances surrounding his identification and the value of the property in question, and argues that his conviction was against the manifest weight of the evidence. We find no merit to Higgins' arguments.
 {¶ 35} Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 36} The concepts of sufficiency of the evidence and manifest weight of the evidence are distinct. "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." Schlee, 1994 Ohio App. LEXIS 5862, at *13. "[T]he weight to be given 1the evidence and the credibility of the witnesses are primarily for the trier of facts." State v.DeHass, (1967), 10 Ohio St.2d 230, at syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony."Thompkins, 78 Ohio St.3d at 387, citing Tibbs v. Florida
(1982), 457 U.S. 31, 42. "The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Id, at 390 (Cook, J., concurring).
 {¶ 37} "A finding on review that the jury's verdict was against the manifest weight of the evidence must be reserved for those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable jury could have found the defendantguilty." State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin,20 Ohio App.3d at 175 (emphasis added).
 {¶ 38} Higgins urges this court to consider the factors ofState v. Mattison (1985), 23 Ohio App.3d 10, to conclude that his conviction was against the manifest weight of the evidence. This court has repeatedly held that while "the Mattison factors are helpful guides when exploring whether a verdict is against the weight of the evidence * * * they do not create a specific standard [of review] to be applied to manifest weight claims."State v. Torres-Flores, 11th Dist. No. 2005-L-046,2006-Ohio-3212, at ¶ 29; State v. Peck, 11th Dist. No. 2004-L-021, 2005-Ohio-1413, at ¶ 13 ("This court has * * * repeatedly deferred to the standards of review set forth by the Supreme Court of Ohio.") (citations omitted).
 {¶ 39} With regard to Locker's identification of Higgins as the suspect, Higgins claims such identification was unreliable, since Locker only observed each suspect for a limited amount of time, was "primed ahead of time by the store manager and the police officer, who told her that they had `caught' the suspect and just needed her to identify him," and because the description she gave of the clothing worn by the suspect was not an exact match of that worn by Higgins. Furthermore, Higgins argues that there was a greater chance of Locker misidentifying Higgins as the "suspect," since he was presented for identification by being made to step out of a police cruiser wearing handcuffs and being made to turn around before identification was made.
 {¶ 40} It is well-settled law in Ohio that a defendant has the burden of proving "that the procedure employed was unfairly suggestive and that the resulting identification was unreliable based on the totality of the circumstances standard adopted in [Neil v.] Biggers[, (1972), 409 U.S. 188]." State v. Brown,
11th Dist. No. 2002-T-0077, 2003-Ohio-7183, at ¶ 19. AccordState v. Green (1996), 117 Ohio App.3d 644, 652 ("[i]t is the defendant's burden to prove that the procedures were both suggestive and unnecessary and that the testimony was or will be unreliable") (citation omitted).
 {¶ 41} Here, there is no allegation by Higgins that the procedure was unnecessary, but rather that the procedure of making him stand outside the marked police car with handcuffs on, for the purpose of identification, was unduly suggestive.
 {¶ 42} In Biggers, the United States Supreme Court set forth the following factors to be considered in a "totality of the circumstances" analysis: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; and (4) the length of time which passed between the crime and the confrontation.409 U.S. at 199-200.
 {¶ 43} "[R]eliability is the linchpin in determining the admissibility of identification testimony." State v. Moody
(1978), 55 Ohio St.2d 64, 67 (citation omitted). Furthermore, "[t]he focus, under the `totality of the circumstances' approach, is upon the reliability of the identification, not the identification procedures." State v. Jells (1990),53 Ohio St.3d 22, 27 (citations omitted) (emphasis sic).
 {¶ 44} Our review of the record below indicates the following: Locker testified that, upon arrival at the mall, she observed one man attempting to break into the external jewelry case, while another was attempting to block this activity from view. Locker stated that she was walking at a normal pace and passed within eight to ten feet of where the two men were standing. She testified that the lighting in the mall was adequate, and that she made eye contact with the man she later identified as Higgins. Locker testified that she had to try to prevent herself from staring at the two men, since she was astounded by the brazenness of their act. Locker further testified that after she passed the men, and proceeded toward the Revol kiosk, she again looked back at the men to confirm what she had seen.
 {¶ 45} Upon arrival at J.B. Robinson, Locker reported what she had seen to Sakasci, the assistant manager. After spending less than a minute in the store reporting the incident, Locker left the store with Sakasci, and was again able to identify the two suspects, who were standing at the far end of the concourse behind a bank of pay phones. Less than an hour later, Locker immediately identified Higgins outside the men's Dillard's store as the individual who was attempting to block the view of the jewelry case.
 {¶ 46} Contrary to Higgins' assertions, although a statement was made that they had caught "the guy," this statement was not made by police, but rather by Sakasci, the store manager. Sgt. Lehner, who stood with Locker during her identification of Higgins, merely stated that police were going to show her a person, and Locker was to let police know "if this is the person you saw [near] the case down by the store."
 {¶ 47} "There is no prohibition against viewing of a suspect alone in * * * a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends * * * to insure accuracy." State v. Jenkins, 11th Dist. No. 2003-L-173,2005-Ohio-3092, at ¶ 19 (citation omitted); Sewell v. Cardwell
(C.A. 6 1972), 454 F.2d 177, 180 (citation omitted); State v.Madison (1980), 64 Ohio St.2d 322, 332; In re Carter, 4th Dist. Nos. 04CA15, 04CA16, 2004-Ohio-7285, at ¶ 15 (citations omitted); State v. Randall, 10th Dist. No. 03AP-352,2003-Ohio-6111, at ¶ 11; State v. Platt (Dec. 16, 1994), 11th Dist. No. 94-A-0015, 1994 Ohio App. LEXIS 5714, at *12-*13.
 {¶ 48} The mere appearance of a suspect in handcuffs for purposes of show-up identifications does not become unreliable or unduly suggestive "when the suspect is apprehended at or near the scene of the crime and is presented to the victim or witness shortly thereafter." State v. Davis, 8th Dist. No. 83033,2004-Ohio-1908, at ¶ 7 (citations omitted); accord State v.Broomfield (Oct. 31, 1996), 10th Dist. No. 96APA04-481, 1996 Ohio App. LEXIS 4785, at *8 ("[T]he fact that the suspect was handcuffed does not invalidate the identification") (citation omitted); State v. Norton (July 29, 1993), 10th Dist. No. 93AP-194, 1993 Ohio App. LEXIS 3749, at *6-*7; State v. Fry
(Aug. 24, 1990), 11th Dist. No. 89-L-14-109, 1990 Ohio App. LEXIS 3658, at *9-*10; State v. Ashley (Mar. 17, 1992), 10th Dist. No. 91AP-910, 1992 Ohio App. LEXIS 1257, at *7 ("The presence of police and use of handcuffs, while suggestive, does not invalidate the identification. Even if the identification was suggestive, it will only be invalidated if there exists a `* * * very substantial likelihood of irreparable misidentification.'") (citation omitted).
 {¶ 49} Moreover, even if the identification procedure contains "notable flaws," it will not, "per se, preclude the admissibility of the subsequent in-court identification."Moody, 55 Ohio St.2d, at 67 (citation omitted). At trial, Locker testified that Higgins was the man who was wearing the white t-shirt and blocking the view of the case. Based upon the totality of the circumstances, it was clearly within the province of the jury to believe that Locker's identification of Higgins as the unidentified man's accomplice was reliable.
 {¶ 50} In his second argument, Higgins, relying on the testimony of DeMarco, the J.B. Robinson store manager, stating that the individual items in the case varied in price from $100 to $5,499, argues that since no items were ultimately taken, "there was no way to ascertain what items the would-be thieves intended to steal." Higgins argues that without such proof, his conviction for grand theft is against the manifest weight of the evidence, since the state "failed to prove, beyond a reasonable doubt, that the thieves attempted to steal property valued at $5,000 or more, but less than $100,000.
 {¶ 51} "In virtually all cases in which an accused's mental state must be proven, the prosecution relies on circumstantial evidence as a matter of necessity." Hill, 2006-Ohio-1166, at ¶ 24, citing State v. Griffin (1979), 13 Ohio App.3d 376, 377. It is a well-settled principle of law that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value, even when used to prove essential elements of an offense." Norwood, 2006-Ohio-3415, at ¶ 15 (citations omitted). Circumstantial evidence may be used to prove any fact, including those facts from which another fact is to be inferred. Fry,
1990 Ohio App. LEXIS 3658, at *12 (citation omitted). "While inferences cannot be built on inferences, several conclusions can be drawn from the same set of facts; and a series of facts and circumstances can be used as the basis for ultimate findings."State v. Lott (1990), 51 Ohio St.3d 160, 168.
 {¶ 52} Here, Higgins' argument conveniently ignores the fact that he was convicted for Complicity to Attempted Grand Theft. Thus, a completed act was not required in order for the jury to find Higgins guilty as charged. As mentioned earlier, DeMarco's testimony established that the total value of the jewelry in the display case was $19,021.00, consisting of diamond rings of varying values. Had the attempt been successfully completed, stealing all of the rings was but one of many possible reasonable inferences the jury could have made.
 {¶ 53} Based upon the fact that the attempted break-in took place in an open mall during normal business hours, along with the attendant risks involved, it is most reasonable to infer that, had Higgins' companion successfully broken into the display case, he would have taken all of the rings, rather than taking his time to browse among the price tags to pick and choose among those rings of lesser value. Since it was within the province of the jury to choose among any of the reasonable inferences derived from the evidence, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice in finding Higgins guilty of Complicity to Attempted Grand Theft.
 {¶ 54} Higgins' second assignment of error is without merit.
 {¶ 55} For the foregoing reasons, we affirm the judgment of the Lake County Court of Common Pleas.
William M. O'Neill, J., concurs, Colleen Mary O'Toole, J., concurs in judgment only.