[Cite as *State v. Mahvi*, 2018-Ohio-4944.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-G-0140** |
| ALI PASCAL MAHVI, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 2016 C 000198.

Judgment: Affirmed.

*James R. Flaiz*, Geauga County Prosecutor, and *Nicholas A. Burling*, Assistant Prosecuting Attorney, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Brandan E. Delay*, 20545 Center Ridge Road, Suite 424, Rocky River, OH 44116 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Ali Pascal Mahvi, appeals his convictions for illegal use of food stamp benefits and Medicaid eligibility fraud, asserting that the state failed to present credible evidence demonstrating that he provided false information in applying for those benefits. We affirm.

{¶2} Appellant lives with his wife and three adult children in Russell Township,

Geauga County, Ohio. Prior to 2012, his primary source of income was from two businesses he operated and owned. The first was Exquisite Caribbean Resorts, LLC, an entity involved in the development of a large tract of land on the island of St. Lucia. Although Exquisite Caribbean Resorts did not own the tract, it had an interest in a Panamanian company that owned the land. The second was Idria Energy, engaged in the trade of petroleum products with foreign nations, including the Soviet Union.

{¶3} After 2012, appellant's income from the businesses declined sharply. At some point within the next four years, a foreclosure action was filed against his private residence. He also had difficulty paying monthly bills associated with the home and various business expenses.

{¶4} In late 2013, appellant discussed his financial problems with two men he met at a local church, Ralph Criswell and Ronald Pollock, owners of a local insurance agency. After learning of the extent of appellant's financial woes, they individually agreed to loan him money to pay his personal and business debts. Over the ensuing three years, until August 2016, Criswell loaned appellant $92,000, and Pollock loaned him $106,000.

{¶5} In addition to the loans, Criswell and Pollock recommended that appellant obtain financial assistance from the government. Consequently, in March 2014, appellant submitted an online application for food stamps with the county's Department of Jobs and Family Services. Under the "real estate" part of the application, appellant listed the family home in Russell Township and a condominium in Florida. However, he did not disclose that his family had bank accounts.

{¶6} Appellant's online application was denied. Nevertheless, approximately one week later, a case worker at the department interviewed him. As part of the process

2

of submitting a new application, appellant told the case worker that he and his family had five bank accounts with a collective balance of approximately $700. Based upon this new application, appellant and his family were awarded food stamps.

{¶7} Three months later, appellant filed a separate written application for Medicaid coverage. His only statement as to income was that that he was self-employed and there had been no net income from his businesses in 2014. He lists no other sources of income. In light of this, the application for Medicaid coverage was approved.

{¶8} After receiving food stamps for approximately one year, appellant returned to the county department for a redetermination interview. In answering a case worker's questions, appellant again referred to five bank accounts for his entire family, stating the total funds in those accounts as less than $700.

{¶9} Similarly, in April 2015, appellant applied for renewal of the Medicaid coverage. As to his income, he again asserted that he did not receive any salary or funds from either of his two companies.

{¶10} Appellant and his family continued to receive food stamps and Medicaid coverage until some point in 2016. In March of that year, the county department of jobs and family services received an anonymous tip regarding the loans appellant and his family had been receiving during the entire two-year period. This tip triggered an investigation into appellant's family finances, including the family bank accounts and his income from the two companies.

{¶11} The investigation culminated in a search of appellant's family residence in September 2016. As the search was being conducted, a department fraud investigator interviewed appellant and his wife. It was at this point that appellant first informed the

department that he held an interest, through Exquisite Caribbean Resorts, in the tract of land on St. Lucia.

{¶12} In December 2016, appellant was indicted on: one count of illegal use of supplemental nutrition assistance program benefits, a third-degree felony under R.C. 2913.46(B); one count of Medicaid eligibility fraud, a fourth-degree felony under R.C. 2913.401(B)(1); and two counts of grand theft, fourth-degree felonies under R.C. 2913.02(A)(3). All counts allege that the benefits appellant received under both the food stamp program and the Medicaid program had a value of between $7,500 and $150,000.

{¶13} Appellant waived his right to a jury trial, and a two-day bench trial was held. The court found appellant not guilty of the grand theft counts. The court also found him not guilty of illegal use of supplemental nutrition assistance benefits, as charged, but guilty of a lesser included fifth-degree version of the offense. As to the Medicaid eligibility fraud count, the trial court found him not guilty as charged, but guilty of the lesser included first-degree misdemeanor version of the offense. The court's decision to reduce the severity of both counts was based upon the finding that the state did not prove beyond a reasonable doubt that the amount of benefits appellant received was $1,000 or more.

{¶14} After conducting a sentencing hearing, appellant was sentenced to three years community control, including 210 days in the county jail, with 180 days suspended, and $2,750 fine.

{¶15} Appellant assigns the following as error:

{¶16} "[1.] The verdict in the trial court on [the illegal use count] is against the manifest weight of the evidence.

{¶17} "[2.] The verdict in the trial court on [the Medicaid fraud count] is against the

4

manifest weight of the evidence."

{¶18}  Under his first assignment, appellant asserts that his conviction for illegal use of supplemental nutrition assistance benefits (i.e., food stamps) is against the manifest weight of the evidence.  The "illegal use" count was primarily predicated upon false statements about the extent of his family's bank accounts in applying for food stamps.  In challenging the state's evidence, he contends that the testimony of the county department's employees should have been rejected as unbelievable.

{¶19}  "'Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.  "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'  *State v. Higgens*, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, at ¶35, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶20}  "Further, '[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' *State v. Fritts*, 11th Dist. No. 2003-L-026, 2004-Ohio-3690, at ¶23, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.  This is so since '[t]he role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion.' *Id.* citing *Thompkins* at 390, 678 N.E.2d 541 (Cook, J. concurring).  'The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given to evidence and the credibility of the witnesses.' *Id.* citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227

5

N.E.2d 212, paragraph one of the syllabus." *State v. McKinney*, 11th Dist. Lake No. 2006-L-169, 2007-Ohio-3389, ¶46-47.

{¶21} Illegal use of supplemental nutrition assistance benefits is defined in R.C. 2913.46(B):

{¶22} "(B) No individual shall knowingly possess, buy, sell, use, alter, accept, or transfer supplemental nutrition assistance program benefits, WIC program benefits, or any electronically transferred benefit in any manner not authorized by the Food and Nutrition Act of 2008 (7 U.S.C. 2011 et seq.) or section 17 of the 'Child Nutrition Act of 1966,' 80 Stat. 885, 42 U.S.C. 1786, as amended."

{¶23} Under the plain language, this statute proscribes taking or accepting food stamps in any manner not authorized. 7 U.S.C. 2015 delineates ineligibility for food stamps:

{¶24} "**(a) Additional specific conditions rendering individuals ineligible**

{¶25} "In addition to meeting the standards of eligibility prescribed in section 2014 of this title, households and individuals who are members of eligible households must also meet and comply with the specific requirements of this section to be eligible for participation in the supplemental nutrition assistance program.

{¶26} "**(b) Fraud and misrepresentation; * * ***

{¶27} "(1) Any person who has been found by any State or Federal court or administrative agency to have intentionally (A) made a false or misleading statement, or misrepresented, concealed or withheld facts, * * * for the purpose of using, presenting, transferring, acquiring, receiving, or possessing program benefits shall, immediately upon the rendering of such determination, become ineligible for further participation in the

6

program * * *.

{¶28} "(2) Each State agency shall proceed against an individual alleged to have engaged in such activity either by way of administrative hearings, after notice and an opportunity for a hearing at the State level, or by referring such matters to appropriate authorities for civil or criminal action in a court of law."

{¶29} In relation to the "illegal use" count, the state presented testimony and other evidence showing that, in applying for food stamps, appellant did not disclose all of the liquid assets at his disposal. If believed, the state's evidence demonstrated: (1) when appellant completed his online application, he was told that he was obligated to disclose all bank accounts and real estate in which he and his family had an interest; (2) in his online application and during his face-to-face interview at the county department, he only disclosed that he and his family had five total bank accounts containing approximately $700; (3) during its subsequent investigation of appellant's finances, the department found that he and his family had over ten bank accounts that contained significant amount of funds during the two-year period; (4) in regard to real estate, appellant only cited the family residence in Geauga County and a condominium in Florida; and (5) after the department instituted its investigation, he admitted owning an interest in a tract of land on St. Lucia through his company.

{¶30} In challenging the credibility of those testifying, appellant argues that none of the county employees were qualified to testify in relation to the bank accounts because they did not have college degrees in forensic accounting. However, such was not necessary to determine the basic facts that appellant had access to more bank accounts than he disclosed, and that those accounts contained additional undisclosed funds.

**{¶31}** As to the additional funds, appellant asserts that, even if he had disclosed the existence of those funds to the department, he and his family still would have been eligible for food stamps because the funds in question were from the personal loans that he received from his two church friends. He emphasizes that funds from loans do not constitute income for purposes of determining eligibility. But, even if true, failure to disclose the existence of those funds renders him ineligible. 7 U.S.C. 2015(b)(1) and (2).

**{¶32}** Furthermore, at trial, appellant testified that he received more than $500,000 in loans during the two-year period, but when pressed, accounted for less than $400,000 in loans, supporting an inference that there was approximately $100,000 in the various bank accounts not attributable to loans.

**{¶33}** Regarding the real estate on St. Lucia, appellant argues he had no duty to disclose because he did not own the tract personally and the land had no equity due to pending mortgages. There was evidence that, although he did not own the entire tract, he held an interest in the land through Exquisite Caribbean Resorts, along with several other investors. His failure to disclose renders him ineligible. 7 U.S.C. 2015(b)(1) and (2).

**{¶34}** There is ample evidence supporting the finding that, when applying for food stamps, appellant intentionally withheld information concerning his family bank accounts and real estate interests. The trial court did not lose its way. Appellant's conviction for illegal use of supplemental nutrition assistance benefits is not against the manifest weight of the evidence, and his first assignment lacks merit.

**{¶35}** Under his second assignment, appellant claims his conviction for Medicaid eligibility fraud is also against the manifest weight of the evidence. As the grounds for

8

this assignment, he relies upon the same arguments that he asserted in support of his first assignment.

**{¶36}** Medicaid eligibility fraud is defined in R.C. 2913.401(B):

**{¶37}** "(B) No person shall knowingly do any of the following in an application for enrollment in the medicaid program or in a document that requires a disclosure of assets for the purpose of determining eligibility for the medicaid program:

**{¶38}** "(1) Make or cause to be made a false or misleading statement; * * *."

**{¶39}** The state's "Medicaid fraud" count against appellant is predicated upon the allegation that, in filing his application for Medicaid coverage, appellant made a false statement about his income. The state presented evidence demonstrating that: (1) as of June 2014, appellant owned two companies, Idria Energy and Exquisite Caribbean Resorts; (2) both entities had open bank accounts under his name; (3) in applying for Medicaid, appellant stated that he was self-employed and that he had received no "net income" from that employment during that year; (4) he failed to report that, as of the date of his application, his business accounts contained more than $6,000; and (5) when appellant applied for renewal of the coverage in April 2015, he did not report that the company accounts had more than $13,000.

**{¶40}** Appellant argues that the funds in the business accounts were from the money he received from his two church friends as loans, and that he would often move the funds between the various personal and business accounts so that his three children could not access them. As to this point, the trial court could reasonably infer that appellant's testimony regarding where he obtained those funds was not believable, and that some of the funds in the business accounts stemmed from the businesses. In

9

conjunction with this point, the trial court specifically found that appellant used funds from the business accounts to pay personal and household expenses.

{¶41} The state presented ample evidence showing that appellant made false or misleading statements concerning his income when applying for Medicaid coverage. As the trial court did not lose its way in considering that evidence, appellant's conviction for Medicaid eligibility fraud is not against the manifest weight of the evidence. Thus, his second assignment also lacks merit.

{¶42} The judgment of the Geauga County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.


10