[Cite as *State v. Starkey*, 2017-Ohio-7946.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-A-0051** |
| KYLE W.M. STARKEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CR 00588.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047  (For Plaintiff-Appellee).

*Thomas Rein,* 820 Superior Avenue, Suite 800, Cleveland, OH  44113 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1}  Kyle W.M. Starkey appeals from the judgment of the Ashtabula County Court of Common Pleas, entered on a jury verdict, convicting him of rape, kidnapping, felonious assault, and intimidation of a witness, and sentencing him to a total term of imprisonment of 35 years.  Mr. Starkey contends his convictions are not supported by sufficient evidence, and are against the manifest weight of the evidence.  He also

contends the trial court did not make the findings necessary to sentence him to consecutive terms of imprisonment. Finding no reversible error, we affirm.

**{¶2}** The following facts are taken from the transcript of trial.

**{¶3}** K.C. lives with her mother, Kimberley Connor, in Wooster, Wayne County, Ohio. In September 2012, when she met Mr. Starkey, she was studying social work at a local college. Mr. Starkey worked the 10:00 p.m. to 8:00 a.m. shift as a cook at the McDonald's near K.C.'s house. The two began dating. By the time of the events in question, Mr. Starkey lived with K.C. in her bedroom on the top floor of the Connor residence.

**{¶4}** At trial, K.C. testified she drove to the McDonald's to pick Mr. Starkey up on the morning of August 7, 2013. On the way home, they stopped at a gas station so he could buy a six pack of beer. When they got home, K.C. sat on her bed, while Mr. Starkey drank the beer, and used the laptop to try to find tickets for a train trip he wanted to take.

**{¶5}** Having finished the beer, Mr. Starkey demanded sex. K.C. testified she refused, telling him he treated her like a sex slave. Mr. Starkey put her in a choke hold, until she passed out. She awoke to him punching her in the face. Mr. Starkey had the knife he kept in the nightstand. He held it to K.C.'s throat, and threatened to kill her if she did not obey his every demand.

**{¶6}** Mr. Starkey forced K.C. to strip, and lean over the bed. Mr. Starkey enjoys carving: he had a semi-completed archery bow in the bedroom. He stuck K.C.'s pet dog's rubber ball in her mouth, so she could not make any noise, and beat her with the bow across the buttocks. He then pulled her to the floor by her hair, and forced her

2

to look at the television. "Dateline" was running a segment on a missing girl. Mr. Starkey told K.C. she would be missing, too. He then made her place a vibrator in her rectum, and perform oral sex on him. He did not relinquish his knife.

{¶7} K.C. defecated in her terror. Mr. Starkey dragged her to the bathroom, and made her wash. He then held her vanity mirror in front of her face, to show her she was pathetic. She was shocked to see the damage he had done. Her forehead was split open, her nose bleeding, her entire face bruised and swollen. Mr. Starkey struck her in the face with the mirror, breaking it.

{¶8} Mr. Starkey forced K.C. back to the bedroom, telling her not to speak except to answer his questions. Holding his knife to her throat, he asked her if there was anything she wanted to do before he killed her. She asked to smoke marijuana with him, believing that might calm him. This succeeded. Mr. Starkey then said they needed to go someplace else, so nobody would see her. Still holding his knife, Mr. Starkey began considering ways to kill K.C.. He told her he might take her to Shreve Lake, beat her to death, then throw her corpse in the water. He also said he might just cut her into pieces and bury them.

{¶9} Mr. Starkey said they should either go to a campground called Mohican, or to Geneva-on-the-Lake in Ashtabula County, Ohio. K.C. suggested Geneva-on-the-Lake, even though she had never been there, since she believed more people would be present. She texted her mother, who was at work, to tell her where they were going. Mr. Starkey then confiscated her phone so she could make no further contacts.

{¶10} They left for Geneva-on-the-Lake about 4:30 or 5:00 p.m., K.C. driving, Mr. Starkey sitting next to her with his knife drawn. The trip took about two hours. On

arriving, they went to a hotel called "Dian's." Mr. Starkey went inside with K.C.'s identification, and money, and rented a room.

{¶11} Mr. Starkey said they would go to a bar. On the way there, they walked along some rocks next to the lake. Mr. Starkey gave K.C. her phone, briefly, so she could take a picture of the sunset. She posted the picture to her Instagram account, with the caption "Geneva-on-the-Lake," so her friends would know where she was if Mr. Starkey killed her.

{¶12} They went to an arcade, then to a bar. Mr. Starkey drank heavily. K.C. asked permission to go to the bathroom. After she came out, Mr. Starkey went in to make sure she had not left a note. She went to the smoking patio, and tried to tell some people that Mr. Starkey had beat her, but they did not believe it.

{¶13} On returning to the hotel, Mr. Starkey again demanded sex. K.C. asked to use the bathroom, since she was experiencing diarrhea due to nerves. When she was done, Mr. Starkey grabbed her by the hair, and dragged her out of the bathroom, before anally raping her, then forcing her to perform oral sex. Mr. Starkey had his knife next to him. He fell asleep. K.C. dressed and got on the bed. She did not know where he had hidden her car keys or phone, and did not try to leave.

{¶14} They were awoken the next morning by the hotel owner, saying they had stayed past check-out time. Mr. Starkey asked whether she had gone to the hospital, which she denied. He did not believe her. They drove back to Wooster. That evening K.C. dropped Mr. Starkey off at the McDonald's, then returned home. She told her mother what had happened, and begged her not to tell the police, since Mr. Starkey would kill them.

4

{¶15} K.C. and her mother put Mr. Starkey's clothes in garbage bags, and dropped them on the porch of his best friend's house. The next morning, Mr. Starkey called when K.C. did not show up at the McDonald's to pick him up. She told him to go to his friend's house. Mr. Starkey continued to contact her via Facebook, sending her a threatening message August 18, 2014, reminding her not to talk, or he would carry out his prior threats. The message is in evidence.

{¶16} K.C.'s mother Kimberly, testified she wanted her daughter to go to the hospital, and contact police, but agreed not to insist when K.C. told her she would commit suicide, preferring to die by her own hand, rather than at Mr. Starkey's.

{¶17} August 11, 2013, Lorissa Miller, K.C.'s best friend, took photos of K.C.'s injuries with her phone. The photos are in evidence.

{¶18} K.C., Kimberly, and Lorissa all testified that K.C. suffered a personality change after these events. She refused to go out with friends, who had to come visit her at home. She even disliked going from room to room, alone.

{¶19} Mr. Starkey testified on his own behalf, firmly denying he ever struck or raped K.C.. He testified that K.C. is a "cutter" – i.e., that she habitually slashes herself with knives or other sharp objects. He testified he walked home from McDonald's on the morning of August 7, 2013, and found her doing this, and decided to break off the relationship. He testified the trip to Geneva-on-the-Lake was simply a "goodbye" treat for K.C., and that they did not stay overnight. He denied sending any threatening message to K.C. on Facebook.

{¶20} Cleo Jackson is Mr. Starkey's best friend. At the time of these events, he was a cashier at the McDonald's, working the 10:00 p.m. to 8:00 a.m. shift with Mr.

Starkey. He testified he had seen K.C. cut herself on a trip to Cedar Point. He further testified that Mr. Starkey accompanied him home on the morning of August 7, 2013, and stayed overnight, before returning to work that evening. He testified he had never seen any garbage bags full of clothes on his porch, but that his girlfriend found some bags there at some point. He testified that K.C. came to the McDonald's parking lot on the morning of August 8, 2013, and created such a scene that the manager asked her to leave. Mr. Jackson further testified that she drove down his street several times thereafter, yelling abuse out of the window of her car.

{¶21} On or about August 31, 2015, K.C. learned that Mr. Starkey was in jail on a murder charge, thus alleviating her fear of him. She contacted the Wayne County sheriff's department, and gave a statement. Wayne County contacted the Ashtabula County sheriff's department, which also investigated.

{¶22} October 28, 2015, the Ashtabula County Grand Jury returned a nine count indictment against Mr. Starkey: count one, kidnapping, a first degree felony in violation of R.C. 2905.01(A)(2); count two, kidnapping, a first degree felony in violation of R.C. 2905.01(A)(3); count three, kidnapping, a first degree felony in violation of R.C. 2905.01(A)(4); count four, rape, a first degree felony in violation of R.C. 2907.02(A)(2); count five, rape, a first degree felony in violation of R.C. 2907.02(A)(2); count six, felonious assault, a second degree felony in violation of R.C. 2903.11(A)(1); count seven, felonious assault, a second degree felony in violation of R.C. 2903.11(A)(2); count eight, intimidation of attorney, victim or witness in a criminal case, a third degree felony in violation of R.C. 2921.04(B); and count nine, domestic violence, a first degree

misdemeanor in violation of R.C. 2919.25(A). Mr. Starkey pleaded not guilty November 24, 2015. Motion practice ensued.

{¶23} June 28, 2016, the case came on for trial. It was submitted to the jury July 1, 2016. The jury returned its verdict the same day, finding Mr. Starkey guilty on all nine counts.

{¶24} Sentencing hearing went forward July 13, 2016. The trial court found that count one, the kidnapping relating to the trip to Geneva-on-the-Lake, did not merge for sentencing purposes, and sentenced Mr. Starkey to five years imprisonment for this. The trial court found that count two, kidnapping, merged for sentencing purposes with count seven, felonious assault. The state proceeded on count two, for which Mr. Starkey received five years imprisonment. The trial court found that count three, kidnapping relating to the rape in Geneva-on-the-Lake, merged with count five, the rape itself. The state proceeded on count five, for which Mr. Starkey received ten years. The trial court found that count four, relating to the rape in Wooster, did not merge, and sentenced Mr. Starkey to ten years imprisonment. The trial court found that count six, felonious assault, merged with count nine, domestic violence; the state proceeded on count six; and Mr. Starkey received three years. The trial court sentenced Mr. Starkey to two years imprisonment on the intimidation count. All terms were run consecutively, for a total term of imprisonment of 35 years. This was memorialized in a judgment entry July 14, 2016.

{¶25} August 29, 2016, Mr. Starkey moved this court for leave to file a delayed appeal, and to appoint counsel. The motion was granted by a judgment entry filed October 24, 2016.

{¶26} Mr. Starkey assigns three errors. The first is: "The State failed to present sufficient evidence to sustain a conviction against Appellant."

{¶27} In *State v. Higgins*, 11th Dist. Lake No. 2005-L-215, 2006-Ohio-5372, ¶22, we stated:

{¶28} "'A sufficiency of the evidence argument challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all elements of the charged offense proven beyond a reasonable doubt.' *State v. Barno,* 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, 2001 WL 1116908 citing *State v. Jones*, 91 Ohio St.3d 335, 345, * * *[2001]. Whether sufficient evidence has been presented to allow the case to go to the jury is a question of law, thus, an appellate court is not permitted to weigh the evidence when making this inquiry. *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13, 1994 WL 738452 (citations omitted). A reviewing court will not reverse a jury verdict 'where there is substantial evidence upon which the jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.' *Id.* citing *State v. Eley* (1978), 56 Ohio St.2d 169, * * *, at the syllabus. Thus, an appellate court will examine the evidence and determine whether that evidence, 'if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt.' *State v. Norwood,* 11th Dist. No. 2005-L-047, 2006-Ohio-3415, at ¶15, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, * * *." (Parallel citations omitted.)

8

{¶29} Mr. Starkey was convicted and sentenced for kidnapping, R.C. 2905.01(A)(2), premised on forcing K.C. to drive with him to Geneva-on-the-Lake. The statute provides:

{¶30} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

{¶31} "* * *

{¶32} "(2) To facilitate the commission of any felony or flight thereafter[.]"

{¶33} If believed by the jury, K.C.'s testimony established that Mr. Starkey forced her to go to Geneva-on-the-Lake, at knife point, under threat of death, so nobody would see the injuries he had inflicted by raping and beating her, and so he could rape her and beat her again in Geneva-on-the-Lake. This is sufficient evidence to sustain the conviction.

{¶34} Mr. Starkey was also convicted of kidnapping in violation of R.C. 2905.01(A)(2), based on K.C.'s testimony that he held her captive in her bedroom, while raping, beating, and dragging her around the room, at knifepoint; and doing the same in Geneva-on-the-Lake. If believed by the jury, this testimony is sufficient to sustain the conviction.

{¶35} Mr. Starkey was convicted of rape in violation of R.C. 2907.02(A)(2) based on the sexual assault in Wooster. The statute provides:

{¶36} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate

9

and apart from the offender, when any of the following applies:

{¶37} "* * *

{¶38} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶39} K.C. testified Mr. Starkey choked her until she fainted; struck her in the face repeatedly; whipped her with his bow; stuffed a rubber ball in her mouth; and raped her orally at knife point. If believed by the jury, this is sufficient to sustain a conviction for rape.

{¶40} Mr. Starkey was also convicted of rape in violation of R.C. 2907.02(A)(2) based on the rape in Geneva-on-the-Lake. Regarding that, K.C. testified he sodomized her and orally raped her, at knife point, under the threat of death. If believed by the jury, this is sufficient to sustain a conviction for rape.

{¶41} Mr. Starkey was convicted for felonious assault, R.C. 2903.11(A)(1) based on the events in Wooster August 7, 2013. The statute provides: "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn[.]" K.C. testified Mr. Starkey choked her; beat her in the face and whipped her with his bow; and hit her in the face with her mirror. If believed by the jury, this is sufficient evidence to sustain a conviction for felonious assault.

{¶42} Mr. Starkey was convicted for intimidation of an attorney, victim, or witness in a criminal case, in violation of R.C. 2921.04(B), which provides, in relevant part:

{¶43} "(A) No person shall knowingly attempt to intimidate or hinder the victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent

10

child action or proceeding, and no person shall knowingly attempt to intimidate a witness to a criminal or delinquent act by reason of the person being a witness to that act.

{¶44} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

{¶45} "(1) The victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding;

{¶46} "(2) A witness to a criminal or delinquent act by reason of the person being a witness to that act[.]"

{¶47} K.C. was both the victim of Mr. Starkey's actions, and a witness to them. She testified he repeatedly told her on August 7, 2013, and August 8, 2013, that he would kill her if she talked to anyone about the events, as well as the person to whom she spoke. On or about August 18, 2014, Mr. Starkey sent her a message on Facebook which includes the following:

{¶48} Mr. Starkey: "You fucked up[.]"

{¶49} K.C.: "What do you mean? .."

{¶50} Mr. Starkey: "You know what I mean your (sic) a lying bitch[.]"

{¶51} K.C.: "What am I lying about?"

{¶52} Mr. Starkey: "I'm done talking to you if your (sic) to (sic) stupid to figure it out then whatever. [B]ut remember what I told you last time we talked in person."

{¶53} Of course, Mr. Starkey denied, at trial, sending K.C. messages on Facebook. Nevertheless, if K.C.'s testimony was believed by the jury, it is sufficient to

11

sustain a conviction for intimidation.

{¶54} All of Mr. Starkey's convictions are supported by sufficient evidence. The first assignment of error lacks merit.

{¶55} Mr. Starkey's second assignment of error is: "Appellant's convictions are against the manifest weight of the evidence."

{¶56} Regarding manifest weight challenges, this court has held:

{¶57} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.) *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994).

{¶58} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶59} With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d. 230, paragraph one of the syllabus (1967).

{¶60} Mr. Starkey cites the following as evidence the jury lost its way.

{¶61} First, he notes that K.C. did not go to the police for more than two years. However, if the jury believed her testimony that he repeatedly threatened to kill her if

12

she did inform the police, it could easily find she had reason to be terrified of him. She only went to the police after learning Mr. Starkey was in jail for murder – but the jury, of course, never learned this.

{¶62} Second, he takes exception to the testimony of K.C., her mother Kimberly, and her friend Lorissa, that K.C. was scared of people after the events in question. He notes that she has worked as a bagger and cashier at a grocery since October 2013. But the jury was entitled to credit the testimony that she was, nevertheless, scared of being around people. Working in a grocery is very public – protection, actually, against an individual who has threatened you for your knowledge of his crimes, and wishes to harm you to escape punishment.

{¶63} Third, he cites to the testimony that K.C. cuts herself, as the explanation for the injuries photographed by Lorissa August 11, 2013. This does not account for the bruising on K.C.'s face and buttocks actually depicted.

{¶64} Fourth, he cites to the testimony of his friend, Mr. Jackson. However, Mr. Jackson actually testified that Mr. Starkey spent August 7, 2013, in his company, which contradicts Mr. Starkey's own testimony that he went to Geneva-on-the-Lake with K.C..

{¶65} The jury's verdict is not against the manifest weight of the evidence. The second assignment of error lacks merit.

{¶66} Mr. Starkey's third assignment of error is: "The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86." R.C. 2929.14(C)(4) sets forth certain findings a trial court must make before imposing consecutive sentences. While no talismanic words are required, the findings must be made both at the sentencing hearing, and the

13

judgment entry of sentence. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Mr. Starkey contends the trial court did not make these findings in its judgment entry of sentence. The division provides:

{¶67} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶68} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶69} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶70} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶71} The judgment entry of sentence in this case provides, in pertinent part:

14

{¶72} "The Court has determined that the Defendant shall serve consecutive prison terms pursuant to R.C. 2929.14 and that consecutive sentences are necessary to protect the public from future crime and to punish the Defendant, and that consecutive sentences will not be disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public."

{¶73} These are the findings required by R.C. 2929.14(C)(4). The judgment entry of sentence continues:

{¶74} "The Court further finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, throughout a two (2) day time period in Wayne and Ashtabula Counties with a victim who was his girlfriend and with whom he resided; and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the Defendant's conduct, as there was more than one (1) Rape, and the Defendant assaulted the victim as evidenced by photos of her beaten and bruised, done by use of threat or force. Further, the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant. This is based upon the Defendant's past juvenile and adult criminal history, as specifically noted on the record, and the Defendant's propensity for violence."

{¶75} These are the additional findings set forth at R.C. 2929.14(C)(4)(b) and (c). Consequently, the trial court put in the judgment entry of sentence the statutory findings required for imposing consecutive sentences on Mr. Starkey.

{¶76} The third assignment of error lacks merit.

{¶77} The assignments of error lacking merit, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, P.J., concurs,

TIMOTHY P. CANNON, J., concurs in judgment only.